**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LANE L. SNYDER,

        Plaintiff-Appellant,

v.

SANDRA HARRIS; DOCTOR
RICKTER; DOCTOR LOPEZ;
WILLIAM A. KLENKE,

        Defendants-Appellees.

No. 10-1143
(D.C. No. 1:07-CV-00998-PAB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **KELLY**, Circuit Judges.

---

Lane L. Snyder brought this 42 U.S.C. § 1983 action against physicians and

officials of the Colorado Department of Corrections, alleging they were

deliberately indifferent to his serious medical needs during his incarceration.  The

district court granted summary judgment for the defendants.  In particular the

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court dismissed Mr. Snyder's claim against Dr. William A. Klenke in his individual capacity without prejudice for failure to exhaust administrative remedies. The court dismissed his claims against the remaining defendants with prejudice.

We review de novo the district court's dismissal for failure to exhaust administrative remedies. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). We also review de novo the district court's grant of summary judgment, applying the same legal standard used by the district court. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir.), *cert. denied*, 130 S. Ct. 259 (2009). Under this standard, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**1. Dr. William A. Klenke**

Mr. Snyder entered the Colorado Department of Corrections (CDOC) custody in April 2005. About a year later, in April 2006, he put in a request for medical attention because of his intense lower back and abdominal pain. Dr. Klenke saw him for the pain and ordered x-rays. The x-rays revealed that Mr. Snyder had a bullet or bullet fragment lodged in his spine. He admitted he had been shot in April 2004 during a robbery, prior to the time he became an inmate of CDOC. He thought that the doctor who operated on him after the shooting had removed the bullet, but the x-rays showed it was still there.

In his amended complaint, Mr. Snyder charged that Dr. Klenke showed deliberate indifference to his health by failing to remove the bullet.[1] He alleged that he later "put in [a] Grievance because nothing had been done" about the bullet but the grievance "was not retur[n]ed." R., Vol. I at 20. After that he "started having problems with HIV and shingles then stopped [the] Grievance [process] for [the] bullet" and pursued other grievances. *Id.*

Under the Prison Litigation Reform Act (PLRA), Mr. Snyder was required to exhaust completely his available administrative remedies prior to bringing his claim against Dr. Klenke in federal court. 42 U.S.C. § 1997e(a). CDOC regulations provide for a three-step administrative grievance process. "Step 1 grievances shall be investigated and answered by the involved DOC employee, contract worker, or volunteer, together with a DOC employee appointed by the administrative head, or designee." Admin. Reg. # 850-04(IV)(C)(1)(a.), *reproduced at* R., Vol. I at 77. Step 2 grievances are investigated and answered by the administrative head, or his designee. *Id.* # 850-04(IV)(C)(1)(b). Step 3 grievances are investigated and answered by CDOC's grievance officer. *Id.* # 850-04(IV)(C)(1)(c). An inmate who has properly pursued all three grievances has exhausted his administrative remedies through the CDOC and may

---

[1]    He named a Doctor Mike Conly rather than Dr. Klenke as the responsible party. The magistrate judge noted that "Dr. Klenke was substituted for the nonexistent Dr. Conly on November 20, 2007." R., Vol. I at 195 n.1.

proceed in federal court. *See Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008); *Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007).

In connection with their motion for summary judgment, defendants submitted the affidavit of Anthony DeCesaro. In it, Mr. DeCesaro stated that he was the Step 3 Grievance Officer for CDOC. R., Vol. I at 171. He had checked CDOC's grievance records and "found no Step 3 Grievance filed by Inmate Lane L. Snyder, # 126117 regarding the medical treatment for a gunshot bullet fragment in his spine." *Id.* This fits Mr. Snyder's representation that he abandoned the grievance process concerning the bullet fragment before completing it.

Mr. Snyder made vague responses to this evidence, none of which create a genuine issue of material fact. In his response to summary judgment, he claimed that "[t]he grievances on the gunshot [claim] seemed to always vanish." *Id.* at 114.[2] He further asserted that he had some step 2 grievances on *other* claims sent back with no response at all, that he filed some "step 3 grievances I never seen again" and that the prison library did not permit him to copy his grievance

---

[2] These representations were made in connection with Mr. Snyder's response to defendants' first motion for summary judgment, which they filed with regard to his original complaint. The district court later required defendants to file another motion for summary judgment with respect to his amended complaint. The DeCesaro affidavit accompanying each motion for summary judgment was identical. Mr. Snyder apparently did not respond to the second motion for summary judgment.

forms. *Id.* It is unclear whether the alleged disappearing Step 3 grievances related to the gunshot bullet claim or the other claims he mentioned.

Mr. Snyder renewed his argument in his response to the magistrate judge's recommendation that his claim against Dr. Klenke be dismissed for failure to exhaust. He stated:

> [M]any times I tried to get the Grievance [copied] but they would not let me. If I could [have copied] the Grievance I could show the Honorable Judge at present that I sent the Grievance in and it just is gone[.] [Nobody knows] what happen[ed] to the Grievance[.] I was even denied [the] right to go to the Law Library bec[a]use I wanted to . . . copy the Grievance on William Klenke.

*Id.* at 246-47.

As evidence of this, Mr. Snyder submitted a "Legal Access Program Denial Form." *Id.* at 250. This form does state that "[t]he legal access program will not copy . . . grievances." *Id.* But that is not the reason Mr. Snyder's request was rejected. According to the boxes checked on the form, he filed the wrong form, because he should have requested "legal assistance/access into the law library." *Id.* He was encouraged to resubmit his request on the proper form. This form reveals nothing about whether Mr. Snyder actually filed a grievance.

Next, he submitted "photocopy request form[s]" which show that his amended prisoner complaint and "motion to see another doctor" were copied by the Legal Access Program at the prison. *Id.* at 251-52. The form to copy his complaint shows he was charged for five copies of a twelve-page complaint

together with a one-page certificate of mailing. His amended complaint is indeed twelve pages long, and contains no grievance forms. *See id.* at 15-26. But there is no indication that he had any grievance forms to copy to accompany the complaint, other than his handwritten notation on the copy form that "I was told that I [can't] photocopy grievance." *Id.* at 251.

Mr. Snyder also claimed that his journal entries proved he filed grievances that were returned without a response. But these entries relate to time periods *after* he filed this suit, not *before* filing when he should have exhausted. *See id.* at 262. Particularly in view of his admission in his amended complaint that he did *not* complete the grievance process with regard to his claims against Dr. Klenke, the district court's determination that he failed to exhaust should be and is affirmed.

## 2. Dr. Jay Richter

In his amended complaint, Mr. Snyder asserts that Dr. Richter was deliberately indifferent to his need for treatment of his HIV and his infection with Hepatitis-C. *Id.* at 21-22. The magistrate judge concluded that Mr. Snyder had also failed to exhaust his remedies as to this claim. But, noting that dismissal for failure to exhaust is without prejudice, the magistrate judge also addressed the merits of the claim, finding that Mr. Snyder had failed to establish deliberate indifference. The district court, observing that Mr. Snyder had failed to object to the magistrate judge's conclusions concerning his failure to exhaust, upheld that

-6-

determination.  But it also adopted the magistrate judge's conclusion that his claim failed on the merits.

The general rule is that "no unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. 199, 220 (2007).[3]  Therefore, even if the district court could enter a disposition dismissing for lack of exhaustion and alternatively dismissing because the claim failed on the merits, this court should not affirm the merits determination if Mr. Snyder in fact failed to exhaust his administrative remedies.

The failure to exhaust is quite plain from the record; it has not been waived by Dr. Richter; and summary judgment should be upheld on that basis.  There is evidence that Mr. Snyder filed a Step 3 grievance concerning his allegations against Dr. Richter.  R., Vol. I at 171.  But he signed this grievance on May 10, 2007, and it was received by the prison authorities on May 25, 2007.  *Id.* Mr. Snyder filed this lawsuit on May 14, 2007, *before* the grievance officer received his Step 3 grievance.  An inmate is not permitted to complete the administrative exhaustion process *after* he files suit.  *See, e.g., Johnson v. Jones*,

---

[3]     PLRA permits a district court to dismiss a claim that fails *on its face* even though it has not been exhausted, provided that the claim is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  42 U.S.C. § 1997e(c)(2).  But that is not what happened here.  Here, the district court denied the claim on the merits because it determined the summary judgment evidence did not establish that Dr. Richter was deliberately indifferent to Mr. Snyder's serious medical needs.  R., Vol. I at 434.

340 F.3d 624, 627 (8th Cir. 2003).  Therefore, Mr. Snyder never completed the grievance process for his claim against Dr. Richter.

Mr. Snyder presented his own evidence concerning his grievances against Dr. Richter, but this evidence does not contradict the sequence of events we have described.  For example, he attached a copy of the May 10, 2007, grievance to his submissions to district court, with a note that "I received grievance 3 step [a] week [later] with no response."  *Id.* at 119.  It is unclear what he means by "a week later," but even if he means a week from the date he signed the grievance, that would still be May 17, 2007, three days after he filed suit.  The grievance was therefore untimely.

One modification is needed to the district court's decision on this point, however.  It dismissed Dr. Richter *with* prejudice on the merits.  But if Mr. Snyder did not exhaust his administrative remedies for his claim against Dr. Richter, the dismissal should have been *without* prejudice.  We will therefore remand so that the district court can change its dismissal to be without prejudice.

### 3.  Dr. Edward Lopez

Mr. Snyder alleged that Dr. Lopez was deliberately indifferent to his serious medical needs because Dr. Lopez did not adequately treat his hemorrhoid problem.  Mr. Snyder admitted that Dr. Lopez prescribed treatment, but contended he was indifferent to Mr. Snyder's complaints that the treatment did not solve his problem.

The magistrate judge recommended that summary judgment be denied on this issue. He concluded "the defendant has left the record barren of evidence even alluding to whether Dr. Lopez ever considered alternative treatment for Plaintiff or knew that the treatment prescribed might not be working." *Id.* at 210.

In his objections to the report and recommendation, Dr. Lopez provided additional evidence with which to address the magistrate judge's concerns. Included in this evidence was the affidavit of Dr. Paula Frantz. Dr. Frantz reviewed the record of Dr. Lopez's treatment of Mr. Snyder. She detailed the following events:

1. On June 19, 2006, Mr. Snyder was seen in the prison clinic with complaints about blood in his stool. Stool sample tests revealed that he did not have blood in his stool at that time.

2. Following his continued complaints of rectal bleeding, Mr. Snyder was referred to Dr. Lopez for a colonoscopy. Dr. Lopez was a member of the CDOC's Panel of Medical Consultants, and provided services for them on a contract basis.

3. The colonoscopy, performed on December 18, 2006, revealed that Mr. Snyder had 3+ internal hemorrhoids.

4. Dr. Lopez prescribed treatment with Anusol with hydrocortisone. Both these medications are used to treat hemorrhoids and the resulting itching and swelling. Mr. Snyder was also provided with stool softeners.

*Id.* at 230-31.

Dr. Frantz explained that "[c]onservative treatment using suppositories and stool softeners is the mainstay of treatment of hemorrhoids." *Id.* at 233. She went on to describe additional treatment provided to Mr. Snyder after Dr. Lopez conducted the colonoscopy and prescribed medication for him. But none of this treatment was provided *by Dr. Lopez*, whose role in Mr. Snyder's treatment had ended.

The medical records attached to Dr. Frantz's affidavit substantiate her account of these events. This being the case, Mr. Snyder's claims against Dr. Lopez, which are based on the failure of the Anusol/hydrocortisone prescription to solve his problem, fail for lack of personal participation. *See, e.g., Cardoso v. Calbone*, 490 F.3d 1194, 1196 n.1 (10th Cir. 2007). Essentially, Mr. Snyder complained that Dr. Lopez's treatment (the "mainstay" of hemorrhoid treatment, according to Dr. Frantz's uncontroverted affidavit) did not cure his problem and that when he returned to the clinic and saw *other* physicians, they did not help him. This does not represent a viable deliberate indifference claim *against Dr. Lopez*. The district court therefore properly granted summary judgment in his favor.

### 4. Sandra Harris

Mr. Snyder's allegations against Ms. Harris in his complaint are somewhat cryptic. He asserts that in February and March 2007 he was "seen by Sandra

-10-

Harris" who told him "she couldn't do anything right now" about his rectal bleeding. R., Vol. I at 23. He also complains that she denied his grievances.

In their summary judgment motion, defendants argued that Mr. Snyder's claims against Ms. Harris should be dismissed for lack of personal participation. They contended that "Snyder merely alleged that Defendant Harris denied his grievances" and that this was not enough to assert a claim against her. *Id.* at 139. They also asserted that Ms. Harris, who is a nurse and works as a Health Services Administrator for CDOC, "deferred to the medical professionals to make the proper medical decisions as to the medical treatment that would be best for Snyder." *Id.* at 138. Ms. Harris's responses to interrogatories supported this contention; she stated that "I do not determine the treatment regime ordered for a specific medical condition." *Id.* at 151. She also later filed an affidavit in which she indicated that she received Mr. Snyder's Step 2 grievance and "referred the matter to a doctor and then denied the grievance." *Id.* at 244.

The magistrate judge recommended that Mr. Snyder's claim against Ms. Harris be denied because its "singular basis" was "her denial of his various grievances." *Id.* at 212. This ignores the admittedly cryptic allegation in Mr. Snyder's complaint that he was "seen by" Ms. Harris, who allegedly told him she couldn't do anything about his hemorrhoid problem. As the district court noted, however, Mr. Snyder did not object to the magistrate judge's

-11-

recommendation that his claim against Ms. Harris be dismissed. *Id.* at 433. The district court nevertheless reviewed the claim for clear error, and found none. *Id.*

The district court's "clear error" review does not preclude application of this court's "firm waiver rule," "which provides that a litigant's failure to file timely objections to a magistrate's report and recommendation waives appellate review of both the factual and legal determinations." *Key Energy Res. Inc. v. Merrill (In re Key Energy Res., Inc.)*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000) (quotation and brackets omitted). This court may apply the rule, notwithstanding the district court's decision to consider claims which have been defaulted by failure to object to a magistrate judge's recommendation. *See id.* at 1201 n.3. If the rule were applied here, this court would not reach the dismissal of Mr. Snyder's claims against Ms. Harris.

In any event, the district court correctly determined there is nothing to these claims. Merely denying grievances is not "personal participation" that will support a cause of action under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Moreover, in one case at least, Ms. Harris states that she did not simply deny the grievance; she passed on Mr. Snyder's concerns to a physician. Finally, Mr. Snyder presented no facts to dispute Ms. Harris's assertion that she was not in charge of his treatment and that treatment decisions were made by doctors, not by her. Summary judgment is therefore affirmed for Ms. Harris.

-12-

### 5. Pending Motions

Mr. Snyder has filed a number of motions in this court. Two of them remain pending with the merits panel.

On May 10, 2010, he filed a "Motion to Supplement Opening Brief." This motion merely seeks to add prescription records, most or all of which date from the time period after he left CDOC custody. This material was either already in the district court record (and irrelevant to the issues on appeal) or not part of the district court record and cannot be used to supplement the record on appeal.

On May 17, 2010, he filed a combined "Motion to Appoint Counsel" and "Motion to Amend[] Opening Brief." This court already denied his motion to appoint counsel. The motion to amend his brief seeks to add some information about exhaustion of administrative remedies, including a letter dated April 24, 2008 from Grievance Officer Anthony A. DeCesaro indicating that he has now completed Step 3 of the grievance process. The problem with this letter, which concerns the claim against Dr. Richter, is that it is dated *after* Mr. Snyder filed this suit. Therefore, for the reasons we have already stated, it does *not* represent valid exhaustion of administrative remedies prior to filing this suit.

We AFFIRM the district court's judgment dismissing the claims against defendants Klenke, Lopez, and Harris, for substantially the reasons stated in its order of March 29, 2010. We REMAND to the district court with instructions to

modify dismissal of the claim against Dr. Richter to be without prejudice for failure to exhaust administrative remedies.  All pending motions are DENIED.

Entered for the Court


Stephen H. Anderson
Circuit Judge